Inspired Development v. Inspired Products Group v. Inspired Products Group Good morning, your honor, counsel. May it please the court, I'm Steve Brannick of Brannick & Humphreys, here representing the appellant IDG. There's going to be two parts to my argument this morning. I'd like to start with the subject matter jurisdiction of the federal courts, and then I'll jump from there into the argument on the merits of the motion for a summary judgment ruling. Okay, well let me start with, I don't know if you were here for the earlier argument, but the one before the last one, we asked both sides, I think, like, why are we here? And I kind of have a variation of that question for you. I mean, this is a breach of contract case. It's an important case. All cases are important. There's a sum of money. It's substantial to some people. But this ping-pong is just jaw-dropping. You didn't, when you first filed this in federal district court, it wasn't because of federal patent jurisdiction, correct? It was a diversity case. It was because you mistakenly thought it was a diversity claim. Correct. So then it goes up to the 11th Circuit, and then it's back, and the judge, had he already decided it on diversity, so he just wrapped his opinion up in a patent law claim and said it was done that way? How did that happen? The parties proceed to judgment on a diversity claim. We go to the 11th Circuit. The 11th Circuit issues one of its jurisdictional letters that says, wait a second, we're not sure there's diversity here. The parties put their heads together and realized, my gosh, the 11th Circuit's right in this case, there is not diversity. But the district court had already decided, the case that went up to the 11th Circuit, the district court had decided it? On the assumption of diversity jurisdiction without any reference to the patent law at all. Okay. And so then the 11th Circuit says, wait a second, there's no diversity, we agree. And so then the parties have very different ideas about what happens next. We say that there was never any jurisdiction in the federal courts at all, and so the judgment below has to be vacated. They say, wait a second, this has been a patent case all along, and therefore there's still jurisdiction in the federal courts under 1338A. And the district court agreed with them. Yes. But on that opinion, you tried to appeal it first. You appealed it to the 11th Circuit. Why didn't you appeal it to us? No, we appealed after the 11th Circuit remanded back to the district court. The district court ruled. Right. At that point in time, it goes. It's still in the 11th Circuit at that point in time, so the parties then each presented their view to the 11th Circuit of what should happen next. And you sought the 11th Circuit to do. To disagree with the district court. To send it back to state court. Did the other side advocate that it come over here because. Yes, they had moved to transfer, and ultimately the 11th Circuit decided no matter what happened, it would never have jurisdiction over the case because either there was no jurisdiction in the federal courts at all, or it's a patent case that comes to this court, so that's why we're here today. I want to ask you about two cases. One is Gunn, obviously, and the other would be Jang or Yang or whatever our opinion is. In Gunn, at least one of the factors, I don't know what to say about whether it's dispositive, but the Chief Justice very much looked at the fact that this was kind of a hypothetical issue that was backward-looking. I think you used that word, backward-looking. This case isn't backward-looking in the same way the Gunn case was, is it? It's not in the sense that the parties are still going to potentially be disputing these patents in the future. So yeah, but there were two really elements of the Chief Justice's decision on substantiality. One was, yes, the fact that it was backward-looking. But not all the cases that are just – the MDS case is a good example where it was forward-looking, and the Eleventh Circuit in that case still decided that it wasn't a patent case because it wasn't substantial. And that leads to the other part of the Chief Justice's decision, which is, in looking at substantiality, we also look at the nature of the patent question. Is this just a dispute on the intricate facts of the case, applying basically well-settled patent law to the facts of the case, or is there some sort of big-picture patent question that's more important than the parties? Well, no, I agree with you. But kind of a third, then, leg of the Chief Justice's opinion is that he talks a lot about how, by definition, a state court opinion is not going to have any kind of binding effect on federal courts that do this patent stuff, either federal district courts or certainly not us. My concern about that factor is that's true of every single case. By definition, a state court is not going to have the authority to do anything that binds us or district courts in patent space. So how do we consider that? Does that wipe out everything that goes to federal court? Doesn't that apply literally? Doesn't that factor mean that we're going to let the state courts do everything? That is a good point, but a number of courts, including this court, have made that exact point, that the state court decision is not going to be binding. It's all kind of wrapped up in the decision of how important is the patent question to this case. Is this really a patent case, or is it really just a state law case? And the substantiality question is part of that. But the importance of the question depends. If this somehow hypothetical state court ends up discussing validity, who knows? He may be deciding secondary considerations in a way that this court has never reached. So I'm having a hard time differentiating between how you say what a state court does. How does that ever become important or substantial question of patent law if it's not done by a federal court? And I think most of the time it's not. It may be never. So I think that is almost always a factor. You can't read this as never, or else the Supreme Court wouldn't have been deciding this case the way it did. Again, that's just one small factor of a number of factors. That's part of looking at the federal versus state balance. Is this basically the kind of case that should be decided in state court? And if it is, we'll tolerate the fact that the state court might intrude into patent jurisdiction. And one of the reasons we're not so concerned about that is because the federal courts aren't going to be bound by what that state court did. So wouldn't there even be collateral estoppel for the parties? Let's assume the state court went off here and really decided, I'm deciding this patent is invalid. Then there would be some law of the case issues certainly between the parties, but not going beyond the parties. But before we get to the substantiality question. When we look at gun factors, are we limited to thinking about the impact on the system overall? Or do we also think about the parties and how it impacts them? Your answer was, yeah, there's impact on the parties and judge pro scenario. But how does that play into our analysis of the gun factors? Well, I think here, look at how the parties treated this case. The parties treated this case like a plain old-fashioned business dispute with contract claims and tort claims. They didn't treat this as a pet case. I understand. I'm just setting aside your particular facts. We should have some consideration in gun versus mitten as to how it impacts the parties, right? The parties' patent rights. Perhaps as a small part of that substantial part of the test. But I think there are easier ways to decide this case other than substantiality. So I'd like to kind of focus on that first. Because their basic argument is that the patent invalidity is part of this case. And our answer to that is, no, it's not. This is an action for past due. There are a dozen design patents which are here, which are at stake. And isn't the standard plausibility now as we go back and forth as to whether jurisdiction is plausible? Here the district judge decided this is really a patent case. It's maybe concealed, indirect. But this is a patent case. I'm going to have to decide validity of these design patents in the course of establishing any of the other rights which are here. So what's implausible about saying that, therefore, jurisdiction belongs to appellate jurisdiction? And this, of course, takes us to the federal court to start with. This is, after all, a federal case. Once you decide it's, after all, a federal case, then it's easy because the jurist, the appeal, would have to come here. So we have to cross the bridge between whether it's a state court or a federal court. Gunn is extremely helpful in helping to decide where the fine lines are, it seems to me, because Gunn was a case of attorney malpractice. So the Supreme Court says attorney discipline. That's up to the states. We're not going to discipline your lawyers. The fact that he happened to be a patent lawyer and, therefore, the charge was that you didn't do this prosecution right, that's very interesting. But this is a malpractice attorney discipline case. And the question of plausibility reposed the case in state court. Now we have the district judge saying, it's a patent case. I've got to decide the validity of all these design patents and everything else. What's implausible about that? Well, first, what's implausible about that is that the validity of the patents is completely irrelevant to any of the claims that we brought. We brought two. We don't know if the patents are all listed. They're all arguing about patents. And this judge announced that this was in the unfair competition aspects. It's really a disguised patent case. So you're saying we need to penetrate the disguise? I'm making three separate points. The first point is a very simple one. This is just an action for past due royalties. We don't have to show validity to win the past due royalties action. In fact, the contract between the parties says that these royalties are due until there's been a decision of invalidity. There's never been a decision of invalidity in this case. You're saying these royalties aren't a valueless product, which takes us to the patent. But there are many cases. That's where the value of the patent and the copyright. But you're right. Going forward, that would be an issue. And clearly, you'd have a patent case if we were suing for patent infringement or we're looking for future royalties. But when you're looking for past royalties, the only question is, did they pay the royalties? And the answer to that question is no. There is no need to look at the validity of the patent at all in that question. Where was validity raised here? It wasn't raised by you. But the other side did have either it was an affirmative defense. It was a counterclaim or affirmative defense. It was a defense. It may have hypothetically posed a validity issue. So that's the second point I'm going to make. One is that validity is irrelevant, so there's no necessity to raise it. The second point is that invalidity was a defense. And we all know from the Christensen case that we don't look at patent jurisdiction. We don't look at federal jurisdiction based on the defenses. We look at jurisdiction based on the well-pleaded complaint. So the fact that they raised it in— It wasn't a counterclaim either, right? Well, then they did raise a counterclaim, but they did not raise a patent counterclaim. The counterclaims were breach of contract, fraud, and negligence. No, no, that's what I asked was did they raise validity as a counterclaim? Part of their breach of contract claim in their counterclaim raised the issue of validity. But there were other aspects of their breach of contract claim that just complained about our failure to get certain assignments. And what several of the cases that we've cited have said, in order to satisfy the essential prong of gun, you have to show that it is essential to decide that patent claim. And so there are two ways to decide a claim. One involves the patent and a validity claim, and the other doesn't. Then you don't have an essential patent claim, so you fail one of the four factors of the gun test. So their counterclaim doesn't make it. No, essential is not the word. Plausible is the word. I thought substantial was the word, just to put my two cents in. But maybe you're right. I was just trying to quote what the Supreme Court has said. Well, the plausibility comes in when you have two of the circuits disagreeing over whether it should be in, let's say, the Eleventh Circuit versus the Federal Circuit. And if one of the courts, one of the Federal Circuits says, yes, it should be in this court, then if that decision is plausible, that decision should stand. But we're not here in that posture. We have a district court decision that we think made an incorrect reading of gun. So you're saying that standard only applies when we're federal versus federal and it doesn't apply on federal versus state questions? That it applies when there are two different federal circuits to which the case might go, and the two federal circuits are disagreeing over that. And the first one, the first decision, if it's plausible, should stand. But we're here on a direct appeal from a decision of a district court, which we think misunderstood and misapplied the gun test. What about Yang? What about the Yang case, our case? The Yang case, in that case, the patent was integral to the case. It was, I mean, if you look, there was a whole series of proceedings in the Yang or Jang or however you pronounce it. And patent dispute was the heart of the case all the way through, the first three proceedings. But the issue before the court in Yang or Jang was that whether the products, whether certain products fell within the scope of the patents. Do you have the same understanding? Right. And that was a key question that had to be decided in that case. And that's not a question here? No, what's different in our case is that this case can be decided and, in fact, was decided without any reference to the patents at all. What about was that, was Yang a federal-federal question versus what's here, what we have as a federal-state issue? It was a federal. I thought there were two federal courts vying for the case, right? Not in the Jang case, I don't believe. I think that was another federal state. But the difference between the Jang case and this case was the fact that the patent case was central to the Jang case. The patent claim was central to the Jang case. You could not decide that case without deciding the patent case. As is perfectly evident from the record that we have before us, you could absolutely decide this case without reaching any of the patent issues. And even if we had gotten past the summary judgment and we had been litigating the contract cases, the invalidity claim was a defense, and it was completely irrelevant to the claim for past royalties. Everything about this case is backward-looking in the sense that we're suing over past royalties. All we have to prove is that— Can I ask you, one of the things that sort of is disconcerting about your argument, kind of going back to the one we just had about the difference between could and would, and you just, I think, a few seconds ago raised the word can, what is the standard for us? I mean, there is potential in a lot of cases, including perhaps this one, that eventually through the litigation, it may become necessary to talk about whether the products are covered by the patent, whether or not there is validity, if the counterclaims were to come into play. So what is that difference between whether it— do we have a difference between whether it necessarily will as opposed to whether it can? How are we supposed—what does it do with that? I think that's all wrapped up into the question of whether the patent issue is substantial. And in many cases, you're looking at that going forward because you're at the start of the case and someone has removed the case to federal court and the parties haven't litigated yet. I think it's easier in our case because we have the benefit of the hindsight. We know exactly how the parties chose to litigate this case, and my goodness, the way they litigated this case was not as a patent case. They litigated it as a breach of contract case with fraud and negligence counterclaims. So is it your view that theoretically, given the claims and the contract here, it could well have been litigated as a patent case, and in that case it would be federal jurisdiction? Well, the question is a patent issue has to be essential. It has to be essential and it has to be actually litigated and it has to be substantial. It wasn't essential here because it was just a claim for past due royalties. Invalidity is irrelevant. It wasn't actually litigated because we see from the summary judgment record that the court decided this issue without making any patent decisions, and it's not substantial for the reasons that I've articulated before. This was just an application of the particular facts of this case to well-settled patent law. There's no big-picture patent issue like the Chief Justice was talking about in the gun case. We're way beyond our time, so I'm going to ask you to sit down and we'll reserve some time. Thank you, Your Honor. Thomas Dye on behalf of Kids from Race. I think the court honed in on the key issues here, and I'll try to address some of those. The Yang case specifically held that Yang's right to relief depends on whether the stents sold by the petitioners would have infringed Yang's patents. So they—I believe what the court in both— In Jiang, the patents have been invalidated, right? There was some action before the Patent and Trademark Office, and there was some inactivity on the part of the patent owner, and therefore the patents, as a result, became invalid. So the question was, in the third appeal to our court, was whether we still had jurisdiction, given that there were no live patents in dispute. And so then when the court referred to infringement, it was referring to the question under the license, correct, of whether the accused products fell within the scope of the patents. Right, and so I believe the ruling of the court and the purpose of it was that Yang could not prevail unless it proved patent infringement. And the same occurs here. Can I just ask—I'm sorry to interrupt your thought, but I'm just looking at Yang now, and it did involve not a state court, right, but involved whether we transferred it back to the Ninth Circuit. I believe that's correct. So the other side cited neurorepair, which is also a malpractice claim in the Federal Circuit case. But there the court said, a plaintiff's right to relief for a given claim necessarily depends on a question of federal law when every legal theory supporting the claim requires the resolution of a federal issue. So here, in regard to this unjust enrichment claim, count three, there could be a number of reasons why a plaintiff might fail in proving— in other words, a defendant might prevail, all the affirmative defenses that might knock out a claim. But I believe that what neurorepair and what Yang were saying is that in order to prevail must a patent issue be involved. And in our case, we have this unjust enrichment claim. In order for the plaintiff to recover under that claim, they would need to prove under the unjust enrichment claim, as they alleged, that there was use of the patents in the manufacture and sale of the products here, which are car seats in the form of cartoon characters or other famous characters, and that the products being sold by our client, because this is only in the case, alternatively, not if there's the patent license agreements in effect anymore, but alternatively, as an unjust enrichment claim, that the unjust enrichment is essentially a patent infringement claim, that we are using products that are infringing their patents. I thought that the claim was simply that you had a benefit. You received a benefit because you were licensed and allowed to use the patents. Yes. And I didn't see where there was any determination required that you actually use them. Well, they said we were licensed in the manufacture and then used the patents. I think paragraph 45 of the complaint. That's what I'm looking at. It's on page 100 of the appendix. So they would only get to the unjust enrichment claim if the patent license agreements were ruled to not exist. It's an alternative. So it's an alternative claim. So you have to assume, then, that there is no patent license agreement in effect at this time. And what they're claiming, then, is the benefit being received by my client with regard to the use and manufacture of the products is that they're using and manufacturing products that infringe the patents. I guess I thought that the unjust enrichment was that you have the ability to use them. You could use them. And, therefore, you should, as an alternative to the contract, even if there isn't a contract, you still have to provide just compensation. If there is no contract, then it's not as a result of the license agreement. It's that we're manufacturing and selling products that use the patents. If we don't use the patents, then there would be no liability. There would be no benefit conferred. And so that's the point that we're trying to make here is that this unjust enrichment claim— in order to receive the benefit of the ability to use the patent. There would be no—of course there would be no benefit conferred if the patents are invalid. It would mean that others couldn't use the patent. Excuse me? It could mean that others couldn't use the patent, for example, right? If you have the exclusive right to use the patent, that gives you some sort of benefit even if you don't use it. Isn't that correct? Well, but if we get to the facts of this unjust enrichment claim, there is no unjust enrichment claim if there's a valid license agreement. I understand. So if we get to this unjust enrichment claim, the only way we're unjustly enriched is that we have a benefit. And the benefit is the use of the patents. And if there are not valid patents or if our products don't use the patents, then there would be no benefit conferred and there would be no benefit to determine damages because there's—and that's essentially what a patent infringement claim would involve. And so what you would do and what the Crye case said and the MPEG case, I believe, out of the Southern District— or the Eastern District of New York, two cases that were very similar here, both unjust enrichment claims that are cited in our brief, both are unjust enrichment claims which the benefit conferred is alleged to have been the use or manufacture— the patents in the use or manufacture of the product or sale of the product. And that's exactly what we have here. Both said that this is basically a patent infringement claim masquerading under the title of unjust enrichment. And although they do plead the elements of unjust enrichment, they also plead the elements of patent infringement. And that's exactly what the grable and the gun factors are here to determine. And Christiansen case said under the second prong of finding jurisdiction under patent jurisdiction is that where there's a state law claim as here, unjust enrichment, in which there's a substantial patent issue, then that is a claim that you cannot allow because the danger here would be every patent license agreement could be filed in state court and then they could allege this. Rather than patent infringement, they could allege an unjust enrichment claim that's essentially a patent infringement claim, and then you'd have state courts deciding this issue. I'm just curious. In the cases that you cited in your brief to support you on this unjust enrichment claim, was the unjust enrichment claim in those cases alternative claims? I believe that unjust enrichment is an equitable claim. So it's always an alternative to the legal claim, which would be the contract or other agreements. Can I read you something in Gunn, a statement in Gunn by the Chief Justice? As our past cases show, however, it is not enough that the federal issue be significant to the particular parties in the immediate suit. That will always be true when the state claim necessarily raises a disputed federal issue, as Grable separately requires. The substantiality inquiry under Grable looks instead to the importance of the issue to the federal system as a whole. And in distinguishing, I believe, this case from Gunn, where the patents were invalid or expired or no longer live, in our case, these patents are live. There's a number of them that are listed in the complaint, I believe 12 or 13 listed in the complaint. And as of the pleading, all of them were live patents, so we're distinguishable with regard to Gunn because of that issue. And I believe Yang essentially addresses the point of, is this essential to the determination? Because we have live patents, so it's going to affect... Okay, let me stick with that a minute. One of the criteria that the Chief Judge calls out is, nor will allowing state courts to resolve these cases undermine the development of a uniform body of patent law. And that's because nothing the state does, if it's a substantial question of patent law, if it's not a substantial question of patent law, and even if it is, maybe, nothing the state court does is going to be binding on federal courts other than maybe with the partisan suit, which we've already sort of put into a different class. Why doesn't that apply here? Even if, hypothetically, the state court, if it ever gets this case, ends up having to make some assumptions or some determinations with regard to validity. Firstly, they don't have the authority to wipe out the patent. And secondly, no one is going to be bound by anything the state court does with regard to patent disputes. So why doesn't this precisely fit into the Chief Justice's contours? Because I think it would have persuasive effect for all business people who want to deal with this issue, perhaps put characters on car seats. They are looking at that opinion, and it has some persuasive effect as to how they would interpret it. I think it's not only what the court were... It's an essential issue to these parties, but also to others doing business in this area, and that's why I think 1338 jurisdiction was established. It's why this court was established in 1982. It's why the Congress doubled down or tripled down on the jurisdiction of the federal courts to have exclusive jurisdiction over patent cases and issues that arise under patents, and even those that arise in the counterclaim, and specifically said that no state court shall have jurisdiction over patent cases. And so all of those indicate the congressional intent that these issues, patent issues, like patent infringement, would be in federal court and be appealed to this court. And I don't think you can underestimate that. In 1992, this court in a decision, Aerojet v. Machine Tools, said Congress made manifest in enacting the Federal Courts Improvement Act the intent to effect a clear, stable, uniform basis for evaluating matters of patent validity, invalidity, patent infringement, and non-infringement so as to render more predictable the outcome of contemplated litigation, two, to facilitate effective business planning, and three, to add confidence to investment in innovative new products and technology. So how do you distinguish Christiansen against Colt, which, again, was sued on a license, a patent license, and then the Supreme Court decided that it did not belong in the federal circuit? So where is the distinction? Well, I'm not intimately familiar with the facts in Christiansen, but as I understand it... I don't know how to answer that, Your Honor. Well, neither do I. But I think it is really a dominant question of everything, actually, that you both have said weigh in terms of equities and all else in terms of, yes, this should go through the system, the judicial system that has been established to consider patent issues when they are involved and dispositive. And the Supreme Court drew, and this is why I kept coming back to the word plausible because that's what was used by the Supreme Court. But there it was, in fact, resolved in favor of, I think it was the Sixth Circuit, because there was diversity, but even though there was a patent license dispute, it seems to me that this is what, ultimately, this case turns on and what we need to distinguish. Again, I think it must have been a close question for the Supreme Court at the time as well because they said, well, if it's plausible, let's not have this ping-ponging back and forth. Do you remember that case went back and forth three times? And so that if the first announcement is plausible, leave it alone. So here we have the Eleventh Circuit and the district court within that circuit makes the plausible decision that this is really a patent case. Does that end it without having to go further in terms of distinctions? Well, I think it certainly would indicate it should end with this court's decision on whether to affirm or otherwise. But yes, I believe, obviously, that the United States District Court in ruling on this issue found that there was jurisdiction under Count 3 for unjust enrichment because it is essentially a patent infringement claim masquerading as an unjust enrichment and also the counterclaims raising issues of validity and invalidity. So we have, dating all the way back to the Aerojet case in 1992, the essential issues of infringement and invalidity raised in both the infringement in the Count 3 and the invalidity in the counterclaims and the district court found that. I'm having a hard time seeing the invalidity issue in the counterclaims. I think that maybe at best you've got an inventorship issue in the counterclaims. So can you explain to me why you have an invalidity issue? Yes, the inventorship issue, of course, goes to ownership of the patents and we contend that the actual engineer who did the design of these patents was not named as an inventor. There's no agreement. What authority do you have for the view that when there's an incorrect inventorship that makes the patent invalid instead of being able to go and correct the inventorship? I think that's where I'm not following the argument. Yeah, okay, well, there are two issues, the inventorship ownership issue and then I believe the validity of the patents was challenged on 112, that they didn't identify the characters in the name of the patent. Where's that in your counterclaim? Oh, I'm sorry, you're challenging the validity of the patent based on 112 because the inventor wasn't identified? No, no, in naming the patents they didn't have the name of the characters and then there was also the issue of prior art that was raised in the counterclaim. Okay. Do you know where that is in your counterclaims? I don't have it, Rob. Well, restitution in paragraph 46 says as the subject patents are invalid and otherwise valueless the circumstances are such that it would be inequitable for IDG to retain such benefit without duly compensating IPG. It doesn't give the facts there, but I think the facts are probably, I don't know how detailed they are in the portion that's incorporated, but... Okay, one further thought. Paragraph 16 doesn't address infallibility as well. Excuse me. Did you get your answer? Yeah, yeah. One further thought because we're way over time. Excuse me? We're out of time. Yes. Any final thoughts? Just as I believe this issue has been addressed by the district court, the case law that we cited in our brief clearly establishes that where there are issues like here where the two key issues under the gun factors are whether the issues are substantial. Here you have live patents as distinguished from gun and you also have the balance of state versus federal issues. We don't have the malpractice issue here. We do have a balance of state versus federal and therefore I think as I quoted from the earlier decisions with both 1338 and with the rulings with regard to the establishment of this court and the AIA, it's clear that Congress's intent was that these patent issues of invalidity and infringement belong in federal court. It's been decided by the district court, which agreed with us, and therefore we believe that the judge's rulings below should be affirmed. Thank you. I wanted to start by talking about the Jang case just for a bit. Jang is different from this case for two important reasons. One, the court specifically said in Jang that you could not decide that case without deciding the invalidity of the patent. Clearly you can decide this case without going there. The patent question is not necessary to this case and as you were pointing out, Judge Newman, it was raised as part of the defense, which is irrelevant under Christiansen for purposes of determining patent jurisdiction. The other thing about the Jang case, and I was mistaken, it was a federal-federal case. The question was it was a diversity case. Everybody knew it was diversity, so it was just a matter of does it belong in this circuit or a different circuit. So you didn't have that federal-state balance that's so important in the four-part gun test, and so that's another reason that Jang is distinguishable. I want to talk a little bit about this unjust enrichment action because it's clearly not a patent case in disguise, and I would commend the court, this court, to its own decision in the Wyrzynski case, which we talked about in the brief. That's another unjust enrichment case where this case talks about the difference between an unjust enrichment action and a patent case, and in words that I think really apply perfectly here. In a patent case, you can sue anyone in the world who is using that product. An unjust enrichment case is based on a relationship between two parties who have entered into a contract that may have failed, and so the cause of action is not based on the patent. It's based on the relationship between the parties, and that one party has conferred a benefit on the other party that that party shouldn't keep. That benefit goes far beyond the patents in this case. What happened in this case was Mr. Pryne sold most of his business to the Bulgari group, who then took over the business and basically kicked Mr. Pryne out, and Mr. Pryne's point in his unjust enrichment cause of action, in IDG's unjust enrichment cause of action, is you basically can't take this business, then terminate me, terminate the patent license agreement, and not pay anything for it. So the unjust enrichment is not just about the use of the patents. It's about basically the fact that they have taken the business away from Mr. Pryne without paying him the $3 million in minimum royalties that he was entitled to. So you can decide that unjust enrichment claim completely apart from the patent. In fact, you could decide that the patent was invalid, and we could still win that unjust enrichment claim because if we were able to prove to a jury that essentially we gave away this business, and you were supposed to pay $3 million in royalties, and the only reason you didn't pay the $3 million in royalties is because we didn't succeed. It could go that way, but it could go the other way. You're saying that if you could decide a case in a certain way, that's not enough to control jurisdiction. Right, but the patent question must be necessary to the case, and my point is that this patent question is not necessary to the case because I can win without it. You tell us it's not necessary. We haven't decided whether it's necessary or not. It's not conceded that it's not necessary. But our point is the district court was wrong because the district court misunderstood that the patent was not necessary to the case. It's not necessary to the patent license royalty count, and it's certainly not necessary to the unjust enrichment count. Can I ask you just real quickly, you're talking about paragraph 45, 46, 47 of the complaint on page A100, but if I understand correctly, there it's not talking about the selling of the business and everything else that you were talking about. It just says the benefit is the licensing and allowing defendant to use its utility and design patents, right? But the way the litigation unfolded between the parties, you're right, the narrow language in count one only refers specifically to the patents, but the way the parties litigated this case as discovery went  it was more than just the patents. I have a question though. When we're deciding whether there's a federal question undergone, are we supposed to just look at the complaint or do we go beyond that and look at the way it was litigated? Well, we look at the well-pleaded complaint. That's right. And the invalidity questions that they raise are part of the defense, so they're not in this well-pleaded complaint at all. And then you have to get to the substantiality point, and that's where this consideration of the balance between the federal issues and the state issues comes into play. And I think at that point in time, the history of the litigation does become important in informing the court about what is really in play in this case. Is this really a patent case, or is this really just a plain old ordinary business contract and tort dispute? Time's up. Thank you both. Thank you.